CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 15 2017

JULIA C. DUDLEY, CLERK
BY: [signature]
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **MICHAEL MOORE,** | ) | **Civil Action No. 7:16-cv-00533** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **GERALDINE BAKER, et al.,** | ) | **By: Hon. Michael F. Urbanski** |
| **Defendants.** | ) | **Chief United States District Judge** |

Michael Moore, a Jewish inmate proceeding pro se, commenced this action pursuant to 42 U.S.C. § 1983 and §§ 2000cc, et seq., against officials at Red Onion State Prison ("ROSP") and the Virginia Department of Corrections ("VDOC"). Plaintiff alleges in the amended complaint (ECF Nos. 18, 33) that Defendants violated the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") when they delayed approving him for a diet in conformity with his religious beliefs for approximately 57 days.[1] Defendants filed a motion for summary judgment, and Plaintiff responded, making this matter ripe for adjudication. After reviewing the record, the court dismisses the RLUIPA claims as moot and grants Defendants' motion for summary judgment as to the remaining claims.

**I.**

Soon after arriving at ROSP in September 2015, Plaintiff believed his Jewish faith compelled him to consume a Kosher diet. In January 20, 2016, Plaintiff applied to receive the VDOC's Common Fare Diet ("Common Fare"). Common Fare is a food menu that is designed to meet inmates' religious dietary restrictions, including restrictions of the Jewish faith.

Plaintiff noted on his Common Fare application that he began practicing Judaism in April 2013 but did not officially declare Judaism as his religion until January 9, 2015. He also noted that he had previously participated in the VDOC's Ramadan program, which is an Islamic

[1] Plaintiff explicitly states he is not presenting a facial challenge to any policy.

holiday, and had been convicted of serious institutional charges during the last two years. In addition to the Common Fare application, Plaintiff signed up to participate in the Jewish holidays of the Fast of Esther scheduled for March 23, 2016, and Passover scheduled between April 23 and 30, 2016.

Plaintiff's counselor prepared a report for the Common Fare application. The counselor noted that Plaintiff had reported being Jewish for three years and had possessed a lot of literature to support the application. However, the counselor noted Plaintiff had at least six institutional charges within the past year, had not participated in Jewish religious services/programs for six months or at the rate of twice per month, and had not contacted the Chaplain's Office for religious guidance, literature, or information. The counselor also noted that Plaintiff had participated in Protestant services at his prior prison.

Both the Institutional Classification Authority ("ICA") and a unit manager reviewed the report and the application and recommended approval. Both recommendations were completed before the Fast of Esther or Passover.

Defendant Baker, who is ROSP's Institutional Programs Manager, denied Plaintiff's Common Fare application on April 10, 2016, which was after the Fast of Esther and before Passover. Baker questioned Plaintiff's sincere need for Common Fare, noting, "[N]o evidence of participation in Jewish holy days. He has attended Protestants services for several years in the past. He has several charges which are significant. . . ."

On May 12, the ICA reconsidered Plaintiff's application and issued an updated report that again recommended approval. The ICA noted for the first time that Plaintiff had possessed Jewish literature and had participated in the Fast of Esther and Passover. The ICA explained

that, although Plaintiff had participated in these holidays, his name had been accidentally omitted from the inmate enrollment list.

Baker approved Plaintiff's application for Common Fare on June 5 based on the ICA's updated report. Baker no longer questioned Plaintiff' sincerity and specifically noted in her second report that Plaintiff had possessed Jewish literature and had participated in the Jewish holidays.

Plaintiff filed a grievance on May 14 about Baker's initial decision denying the Common Fare application.[2] Defendant Artrip, who was Red Onion's Assistant Warden, responded on May 23 and deemed the grievance unfounded because Baker's decision did not violate prison procedures. Artrip reiterated that the record had not fully demonstrated a sincere need for Common Fare based on the lack of participation in Jewish holidays, but Artrip told Plaintiff he could reapply.[3]

Plaintiff alleges that he was injured by not being approved for Common Fare for 57 days. He says he suffered headaches, lightheadedness, nausea, cramps, hunger pains, weight loss, and spiritual discomfort. Plaintiff specifically seeks damages and declaratory relief.

## II.

Defendants filed a motion for summary judgment, arguing, inter alia, that they are entitled to qualified immunity. Qualified immunity permits "government officials performing discretionary functions . . . [to be] shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

---

[2] Before filing the regular grievance, Plaintiff had complained of Baker's decision to defendant Warden Barksdale via offender request forms. Although Warden Barksdale did not respond to the request forms, Warden Barksdale talked to Plaintiff on April 30 about Baker's decision. The parties agree that Warden Barksdale is entitled to summary judgment based on these acts.

[3] Defendant Elam, who is a VDOC Regional Administrator, upheld Artrip's decision on administrative review. Notably, Elam acknowledged that Baker had already approved the second Common Fare application. The parties agree that Elam is entitled to summary judgment based on this act.

reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Once a defendant raises the qualified immunity defense, a plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right. Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993).

A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-24. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by the motion for summary judgment. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009).

## III.

Plaintiff argues that Baker and Artrip violated the Fourteenth Amendment's Equal Protection Clause by not approving his first Common Fare application. The Equal Protection Clause generally requires the government to treat similarly situated people alike. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). To state an equal protection claim, an inmate "must first demonstrate 'that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" Id. (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). Reliance on labels and conclusions is insufficient. See, e.g., Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Plaintiff bases these accusations of discrimination on labels and conclusions. Other than invoking the term "equal protection" and "Fourteenth Amendment," Plaintiff has not alleged any facts from which it could be determined that similarly-situated individuals are being treated differently, nor has he alleged any facts from which it could be inferred that defendants had deliberately discriminated against him on the basis of his religion. Accordingly, Defendants are entitled to qualified immunity and summary judgment for the equal protection claims.[4]

## IV.

The parties agree that the RLUIPA claims are moot. Damages are not an available remedy under RLUIPA. See Sossamon v. Texas, 563 U.S. 277, 293 (2011) (prohibiting damages claims against state officials in their official capacity); Rendelman v. Rouse, 569 F.3d 182, 189

[4] In the amended complaint, Plaintiff does not specifically reference the Fourteenth Amendment's Due Process Clause, a protected liberty interest, or a protected property interest. Plaintiff's simple citation to the Fourteenth Amendment fails to state a violation of due process. Cf. Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015); see, e.g., Twombly, 550 U.S. at 555 (noting labels and conclusion are not sufficient to fulfill elements of a claim). Plaintiff's reliance in the amended complaint on the phrase "deliberate indifference" is equally unavailing and insufficient to state a constitutional claim.

(4th Cir. 2009) (same for individual capacity). Plaintiff has already been approved for Common Fare to accommodate his sincere religious need for a Kosher diet. Consequently, any declaratory relief in Plaintiff's favor here – that Plaintiff should be added to Common Fare – would not have a practical impact on Plaintiff's rights and would not redress in any way the injury he originally asserted. See Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 763 (4th Cir. 2011) (recognizing a claim is mooted when the claimant receives the relief he sought to obtain through the claim). Accordingly, the RLUIPA claims are dismissed as moot.

## V.

An inmate's right to religious exercise under the First Amendment must be balanced with a prison's institutional needs of security, discipline, and general administration. Cutter v. Wilkinson, 544 U.S. 709, 722 (2005); O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987). A "substantial burden" on religious exercise occurs under the First Amendment if it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or . . . forces a person to choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand."[5] Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006). A correctional policy or practice that substantially burdens an inmate's First Amendment right is valid if it is reasonably related to legitimate penological interests. Lovelace, 472 F.3d at 199. Whether a regulation is reasonably related depends on:

> (1) [W]hether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right ... remain open to prison

---

[5] The court assumes for purposes of this opinion that Plaintiff's desire for a Kosher diet is a personal practice that is both sincerely held and rooted in religious belief. See, e.g., Cutter, 544 U.S. at 725.

> inmates," an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns.

Id. at 200 (citing Turner v. Safley, 482 U.S. 78, 89-92 (1987)); see Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (recognizing the prisoner has the burden to disprove the validity of a prison regulation pursuant to the Turner analysis).

Plaintiff fails to establish that Baker's first decision to deny the Common Fare application was not rationally related to legitimate government interests.[6] "[P]rison officials may appropriately question whether a prisoner's religiosity, asserted as a basis for a requested accommodation is authentic." Cutter, 544 U.S. at 725 n.13. There is a logical connection between the policy of requiring Common Fare applicants to demonstrate sincerity and rationing limited resources among inmates. See Turner, 482 U.S. at 89-90 (noting the logic of a regulation must be so remote as to render the policy arbitrary or irrational as to be violating the First Amendment).

It was not unreasonable for Baker to deny the application. The record before Baker for the first decision was unsound. Plaintiff had observed an Islamic fasting holiday and had attended Protestant services at his prior facility. Notably, Plaintiff had eaten from the Master Menu and not Common Fare during the two and a half years since practicing Judaism and an entire year following his official conversion to Judaism. Plaintiff had alternatives means to

[6] Plaintiff also alleges Defendants failed to comply with provisions of the Common Fare policy, including whether they could rely on institutional convictions to adjudicate a Common Fare application. However, a claim that prison officials have not followed their own independent policies or procedures does not state a constitutional claim. See, e.g., United States v. Caceres, 440 U.S. 741, 752-55 (1979); Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990).

practice his religion without Common Fare, just as he had for years before applying for Common Fare. He could freely possess literature about Judaism and could participate in Jewish holidays. Yet, the prison record available to Baker the first time did not reflect that Plaintiff had participated in any Jewish holiday since converting from Protestantism.

Conditionally allowing an inmate to receive Common Fare until an application is resolved would increase administrative and purchasing costs unnecessarily for inmates conditionally approved and then denied. Inasmuch as the Common Fare policy does not restrict applications, inmates could abuse the conditional approval system to repeatedly receive highly-sought and more expensive Common Fare without a religious need.[7]

The obvious, easy alternative was to reconsider the application when new pertinent information was available, which occurred in this case. Baker approved the application once the administrative record was corrected and once the complete record more plainly demonstrated a sincere need for Common Fare.[8] The delay to approve the application was brief. See, e.g., McCormack v. Myers, No. 6:06-2344-HFF-WMC, 2007 U.S. Dist. LEXIS 103738, at *9-11, 2007 WL 1704905, at *4 (D.S.C. May 18, 2007) (holding that no constitutional violation for ten week delay in processing inmate's request for Kosher meals), report and recommendation adopted, 2007 U.S. Dist. LEXIS 42660, 2007 WL 1704905 (D.S.C. Jun. 12, 2007); see also Hoye v. Clarke, No. 7:14CV00124, 2015 U.S. Dist. LEXIS 68237, at *10-15, 2015 WL 3407609, at *7 (W.D. Va. May 27, 2015) (recognizing a six-month suspension from Common

---

[7] By virtue of the repeated litigation in this court about Common Fare, the court is familiar with the increased administrative burdens and costs of Common Fare relative to the Regular Menu.

[8] No relief could be afforded for an argument that Barker was negligent for not adequately investigating the Jewish holiday participation records. "Allowing negligence suits to proceed under [the First Amendment] would undermine . . . deference [to the experience and expertise of prison and jail administrators] by exposing prison officials to an unduly high level of judicial scrutiny." Lovelace, 472 F.3d at 194; see Shaheed v. Winston, 885 F. Supp. 861, 868 (E.D. Va. 1995), aff'd, 161 F.3d 3 (4th Cir. 1998). Consequently, less than intentional conduct is not sufficient to meet the fault requirement for a First Amendment claim.

Fare does not pose atypical and significant hardship in relation to the incidents of ordinary prison life), aff'd, 628 F. App'x 199 (4th Cir. 2016); Awe v. Va. Dep't of Corr., No. 7:12-CV-000546, 2013 U.S. Dist. LEXIS 161227, at *4-10, 2013 WL 5988869, at *3 (W.D. Va. Nov. 12, 2013) (same), aff'd, 564 F. App'x 54 (4th Cir. 2014). Also, the brief delay constituted an "inconvenience on religious exercise" and was not "substantial"; the first denial maintained the status quo of Plaintiff eating from the Regular Menu just like he had done for years since practicing Judaism. See, e.g., Konikov v. Orange Cnty., Fla., 410 F.3d 1317, 1323 (11th Cir. 2005).

Furthermore, Artrip is entitled to qualified immunity for the First Amendment claim. In light of the more limited record from the first application, Artrip's administrative review of Baker's decision does not establish a First Amendment violation. Plaintiff does not describe how Artrip was otherwise personally involved in a violation of the First Amendment, and Artrip is not liable merely for a subordinate's act or omission. See, e.g., Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (discussing the deliberate indifference standard for a supervisor's liability under § 1983); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7, 691-94 (1978). Accordingly, Baker and Artrip are entitled to qualified immunity and summary judgment.

**VII.**

For the foregoing reasons, the court dismisses the RLUIPA claims as moot and grants Defendants' motion for summary judgment as to the remaining claims.

**ENTER**: This 15th day of December, 2017.

/s/ Michael F. Urbanski

Chief United States District Judge